UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL CONTINENTAL INSURANCE CO., | |
| Plaintiff, | Case No. 17-cv-2603 |
| v. | |
| GIAN SINGH, as Representative of the Estate of Harpreet Singh, Sumeet Singh, AG EXPRESS, INC., and D LINE LOGISTICS, INC., | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

In this insurance coverage dispute, Plaintiff National Continental Insurance Co. (NCIC) sued Defendants D Line Logistics, Inc. (DLL), AG Express, Inc., and Gian Singh seeking a declaratory judgment that it owes no coverage obligations under an insurance policy issued to DLL, in connection with claims filed against Defendants in *Gian Singh, as Personal Representative of the Estate of Harpreet Singh, deceased v. Sumeet Singh and D Line Logistics, Inc.*, 2016-L-006728 (Circuit Court of Cook County, Illinois). NCIC moved for summary judgment. For the reasons explained below, this Court denies NCIC's motion.

I.  **Background**

The facts in this Court's discussion come from NCIC's Local Rule 56.1 statement of facts [78], DLL's response to NCIC's statement of facts and additional

1

facts [81], Gian Singh's response to NCIC's statement of facts [83], and NCIC's response to DLL's additional facts [85].

### A. The Relevant Parties

NCIC is an insurer. [78] ¶ 3. DLL provides long-haul trucking services using independent contractors as drivers. [85] ¶¶ 3, 5. Both Harpreet Singh and Sumeet Singh drove for DLL. *Id.* ¶ 6.[1]

### B. The Underlying Case

The underlying case arises from a tragic accident. In July 2016, Gian, as representative of Harpreet's estate, filed a complaint against Sumeet, DLL, and AG Express in Illinois state court. [78] ¶ 1. The complaint alleges that on March 23, 2015, Harpreet sustained fatal injuries when a vehicle jointly owned by DLL and AG Express, and operated by Sumeet, pinned him against a neighboring semi-truck, crushing and ultimately killing him. *See generally* [78-1]. The complaint further alleges that, at the time of the accident, Sumeet was an employee of AG Express and/or DLL. *Id.* ¶ 7. The complaint seeks damages on behalf of Harpreet's estate against the defendants on various state-law claims. *See generally id.*

### C. The Policy

In October 2015, NCIC issued an insurance policy numbered 000-7344-040-4 (the Policy) to DLL with effective dates of October 5, 2014 to October 5, 2015. [85] ¶ 1; [78-2] at 1. The Policy provides the following liability coverage to DLL:

---

[1] Because Gian Singh, Harpreet Singh, and Sumeet Singh share a last name, this Court refers to them by first name for the remainder of its opinion.

2

> A. Coverage
>
> We will pay sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

[78-3] at 8.

The Policy contains the following definitions:

> C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.
>
> . . . .
>
> F. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."
>
> . . . .
>
> I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."
>
> . . . .
>
> O. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

*Id.* at 16–18.

The Policy contains two exclusions at issue here. First, the "Fellow Employee" exclusion provides, in relevant part, that the Policy excludes from coverage bodily injury to any "fellow 'employee' of the 'insured' arising out of and in the course of the fellow 'employee's' employment or while performing duties related to the conduct of your business." *Id.* at 10. Second, the "Employee Indemnification and Employer's Liability" exclusion provides that the Policy does not cover bodily injury to an

3

"'employee' of the 'insured' arising out of and in the course of (1) Employment by the 'insured'; or (2) Performing the duties related to the conduct of the 'insured's' business." *Id.*

The Policy attaches a federally-mandated endorsement—known as the MCS-90 Endorsement—which says that the "insurance policy to which the endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA)." [78] ¶¶ 6, 7; [78-2] at 41. The MCS-90 Endorsement also explicitly states that "all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company." [78-2] at 41.

### D. The Coverage Dispute

In December 2016, NCIC's claim representative issued a reservation of rights letter to DLL. [78] ¶ 13. The December 2016 letter states that coverage under the Policy may be excluded under the Policy's "Fellow Employee" and "Employee Indemnification and Employer's Liability" exclusions. *Id.*

Approximately three months later, NCIC sent DLL a second reservation of rights letter, stating that the definition of "employee" supplied in the Federal Motor Carrier Safety Regulations (FMCSR) applies to define the term in the Policy. *Id.* ¶¶ 14, 16. That March 2017 letter further states that, based upon this definition, the

4

"Fellow Employee" and "Employee Indemnification and Employer's Liability" exclusions barred coverage. *Id.* ¶ 16. The letter also states that NCIC would defend DLL in the underlying case under a full reservation of rights. *Id.* ¶ 18.

In April 2017, NCIC filed its initial complaint in this Court for declaratory judgment, *id.* ¶ 19 n.3; NCIC amended the complaint one month later, *id.* ¶ 19. In February 2018, NCIC filed a second amended complaint against Defendants seeking a declaration that: (1) NCIC owes no coverage under the Policy for the underlying case; and (2) NCIC owes no duty to defend or indemnify Defendants in the underlying case. *See* [72] at 6–7.

In June 2017, DLL filed a counterclaim against NCIC, seeking a declaration that: (1) there is affirmatively coverage under the Policy relating to the underlying case; (2) NCIC has an obligation to defend Defendants in the underlying case; (3) and NCIC must pay damages awarded in the underlying case up to the Policy's limits. [16] at 4–8.

## II. Legal Standard

Courts should grant summary judgment when the moving party shows that no genuine dispute exists as to any material fact and the evidence weighs so heavily in the moving party's favor that the moving party "must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also* Fed. R. Civ. P. 56. A genuine dispute as to a material fact exists when, based upon the evidence, a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. To show a genuine dispute as to a material fact, the non-moving party must point to

"particular materials in the record," and cannot rely upon the pleadings or speculation. *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014).

At summary judgment, courts must evaluate evidence in the light most favorable to the non-moving party and must refrain from making credibility determinations or weighing evidence. *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017) (citing *Anderson*, 477 U.S. at 255). The moving party bears the burden of establishing the lack of genuine disputes as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### III. Analysis

#### A. Illinois Contract Law

The parties agree that Illinois law governs the interpretation of the Policy in this case. *See, e.g.*, [77] at 12–13; [80] at 6; [82] at 6. Under Illinois law, if policy provisions "are clear and unambiguous there is no need for construction and the provisions will be applied as written." *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 843 (7th Cir. 2013) (quoting *U.S. Fire Ins. Co. v. Schnackenberg*, 429 N.E.2d 1203, 1205 (Ill. 1981)). The provisions in a "clear and unambiguous" policy "must be given their plain, ordinary, and popular meaning, and the policy will be applied as written, unless it contravenes public policy." *Id.* (quoting *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007)).

#### B. The Policy's Definition of "Employee" Controls

NCIC argues that the Policy's "Fellow Employee" and "Employee Indemnification and Employer's Liability" exclusions defeat coverage here. [77] at

6

11–14. The parties agree that the applicability of the exclusions turns on whether Harpreet and Sumeet were "employees" of DLL under the Policy. *Id.*; [80] at 6–12; [82] at 5–9.

In its motion, NCIC makes no effort to classify Harpreet and Sumeet as "employees" of DLL under the Policy's existing definition. NCIC instead argues that the definition of "employee" set forth in the FMCSR applies to the Policy. [77] at 10–14. That definition "includes a driver of a commercial motor vehicle (*including an independent contractor* while in the course of operating a commercial motor vehicle)." 49 C.F.R. § 390.5 (2018) (emphasis added). NCIC reasons that, because it issued the Policy to a federal motor carrier to comply with the requirements of the FMCSR, the Policy should incorporate the broader "statutory employee" definition. [86] at 10–11. NCIC also points to the MCS-90 Endorsement as "additional proof" that the parties intended to comply with the FMCSR. *Id.* at 11.

This Court disagrees. The Policy is clear and unambiguous. It supplies a definition of "employee" that does not mention or reference the more expansive federal "statutory employee" definition. *See* [78-3] at 17–18. Nor does the MCS-90 Endorsement itself mention or reference the "statutory employee" definition. *See* [78-2] at 41–42. To the contrary, the MCS-90 Endorsement expressly states that "all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect." [78-2] at 41. Applying the Policy as written, *Wehrle*, 719 F.3d at 843, this Court finds that the Policy does not incorporate the "statutory employee" definition.

This Court's decision accords with the balance of the persuasive authority on this issue. For instance, in *Gramercy Insurance Company v. Expeditor's Express, Inc.*, the Sixth Circuit rejected reading into the underlying motor carrier policy the federal "statutory employee" definition where the policy already supplied a definition of "employee," and nothing in the policy or attached MCS-90 endorsement suggested that the "statutory employee" definition should apply. 575 F. App'x 607, 608–09 (6th Cir. 2014). Central to the Sixth Circuit's analysis was its determination that it could not adopt a definition that reduced the scope of coverage to the insured: "the relevant language of the endorsement—'amend[s the contract] to assure compliance'—does not incorporate the [statutory] definition of employee into the contract. . . . Nothing in the language of the endorsement suggests it operates to amend the more generous coverage in the insurance contract *down* to the minimum requirements" of the federal Motor Carrier Act. *Id.* at 609.

Similarly, in an opinion affirmed by the Eighth Circuit, the District of North Dakota declined to import the FMCSR's broad definition of "employee" into a motor carrier policy where the policy already contained a definition. *See Great W. Cas. Co. v. Nat'l Cas. Co.*, 53 F. Supp. 3d 1154, 1185–87 (D.N.D. 2014), *aff'd*, 807 F.3d 952 (8th Cir. 2015). As in *Gramercy*, the court found it significant that the policy already defined "employee" and made "no similar attempt" to incorporate the "statutory employee" definition. *Id.* at 1186. And, like the *Gramercy* court, the District of North Dakota recognized that adopting the federal "statutory employee" definition would "upset the expectations of the parties" by having the "effect of reducing the scope" of

8

coverage. *Id.* The court also found that the attached MCS-90 endorsement did "not evince an intent that the federal 'statutory employee' definition be read into the underlying policy," and rather "expressly states it does not otherwise modify the underlying policy." *Id.* at 1187.

The District of Colorado reached a similar conclusion in *Northland Insurance Company v. Rhodes*, No. 09-CV-01691-REB-CBS, 2010 WL 5110107 (D. Colo. Dec. 9, 2010). There, the court also declined to adopt the "statutory employee" definition where the policy already included a definition of "employee." *Id.* at *7. The court further reasoned that "the fact that the contract includes such a definition suggests that, regardless of the overarching purpose of the contract, the parties did not specifically intend to incorporate the regulatory definition of 'employee' into the policy." *Id.*

Thus, the courts in *Gramercy*, *Rhodes*, and *Great West* declined to adopt the broader "statutory employee" definition into insurance policies where: (1) the policy already defined "employee;" and (2) neither the policy itself nor the MCS-90 endorsement referenced incorporation of the statutory definition. *Gramercy* and *Rhodes* additionally recognized that adopting the "statutory employee" definition would effectively reduce coverage, and upset the expectations of the contracting parties. The circumstances here are the same, and the reasoning set forth in those cases persuades this Court.[2]

---

[2] The courts in *Great West* and *Rhodes* expressly noted in their opinions that, under applicable substantive law, the court's function was to give effect to the plain language of a clear and unambiguous insurance policy. *See Great W. Cas.*, 53 F. Supp. 3d at 1187 (North Dakota's rules of construction require courts to apply the "plain language of the policy"); *Rhodes*, 2010 WL 5110107, at

9

Several cases upon which NCIC relies where courts incorporated the federal "statutory employee" definition are distinguishable. In one, the Fifth Circuit affirmed the district court's finding that the broader FMCSR "statutory employee" definition applied to a policy, triggering the application of the policy's employee exclusions. *See Consumers Cnty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 366–67 (5th Cir. 2002). Unlike here, however, the Fifth Circuit noted that the relevant policy did not otherwise define the term "employee." *Id.* at 364 n.2. The two other primary cases that NCIC relies upon similarly fail to indicate that the underlying policies included any definition of "employee." *See Canal Ins. v. A & R Transp. & Warehouse, LLC*, 827 N.E.2d 942 (Ill. App. Ct. 2005); *Perry v. Harco Nat'l Ins. Co.*, 129 F.3d 1072 (9th Cir. 1997).

Indeed, NCIC identifies just one case in which a court adopted the federal "statutory employee" definition over a policy's existing definition. *See Miller v. Northland Ins. Co.*, No. M2013-00572-COA-R3CV, 2014 WL 1715076, at *4 (Tenn. Ct. App. Apr. 29, 2014). This lone Tennessee state court case, though, goes against the weight of persuasive authority. Moreover, the opinion contains nothing suggesting flaws in the reasoning of the other courts.

**C.     The Exclusions Do Not Apply As a Matter of Law**

This Court's analysis, however, does not end with the inapplicability of the

---

*7 (noting that Colorado law applies, and citing *Theriot v. Colorado Association of Soil Conservation Districts Med. Benefit Plan*, 38 F. Supp. 2d 870, 876 (D. Colo. 1999) which provides that, under Colorado law, an unambiguous contract should "be enforced according to its plain language"). This Court must do the same under Illinois law. *See Wehrle*, 719 F.3d at 843.

federal "statutory employee" definition, because NCIC's argument in favor of non-coverage depends entirely upon a finding that the federal "statutory employee" definition applies when interpreting the two exclusions, s*ee generally* [77]; [84]; [86]. This comes as no surprise where the parties do not dispute that Harpreet and Sumeet were independent contractors to DLL at the time of Harpreet's injury. NCIC itself repeatedly characterizes them as such. *See, e.g.*, [77] at 10; [78] ¶ 35 (asserting that Harpreet and Sumeet were "independent-contractor drivers to DLL").

In its motion, NCIC does not argue that independent contractors fit within the Policy's definition of "employee." Nor could it, because, absent incorporation of the "statutory employee" definition, the contract is clear and unambiguous on this point. Applying the Policy as written, and giving the Policy's provisions their "plain, ordinary, and popular meaning," *see Wehrle*, 719 F.3d at 843, this Court finds as a matter of law that the term "employee" as defined and used in the Policy does not include independent contractors like Harpreet and Sumeet. As such, the exclusions upon which Plaintiff wholly bases its motion do not preclude coverage. Accordingly, this Court denies NCIC's motion.[3]

## IV. Conclusion

This Court denies NCIC's motion for summary judgment [76]. All dates and deadlines stand.

---

[3] DLL argues that this Court should deny NCIC's motion on another basis: that estoppel bars NCIC from asserting non-coverage because NCIC delayed in adequately issuing its reservation of rights. [80] at 12–16. Given the result above, this Court need not reach the merits of this argument.

11

Dated: August 14, 2018

                              Entered:

                              _____
                              John Robert Blakey
                              United States District Judge